IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL ESCOBAR NEGRON,<br><br>    Petitioner,<br><br>  v.<br><br>J. TIM OCHOA, Warden,<br><br>    Respondent. | No. C 10-1976 CW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

## INTRODUCTION

Petitioner Gabriel Escobar Negron, a state prisoner, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging the following two claims: (1) the trial court erroneously excluded medical evidence regarding the paternity of a domestic violence victim's unborn child, and (2) the trial court violated Petitioner's due process rights by refusing to admit this evidence into the record. On June 24, 2010, the Court issued an Order to Show Cause why the present writ should not be granted. On October 22, 2010, Respondent filed an answer. Petitioner did not file a traverse.

Having considered all of the papers filed by the parties, for the reasons discussed below the Court DENIES the petition.

## PROCEDURAL BACKGROUND

On August 14, 2008 a jury found Petitioner guilty of willfully inflicting corporal injury resulting in a traumatic condition upon a cohabitant under California Penal Code § 273.5(a). The trial court sentenced Petitioner to the aggravated term of five years in state prison for the violation of California Penal Code § 273.5(a) with a prior conviction, and further imposed three consecutive one-

year sentences for his three prior prison terms, for an aggregate sentence of eight years.

Petitioner filed a timely appeal to the California Court of Appeal on May 21, 2009. On December 15, 2009, the state appellate court affirmed the trial court's judgment.

Petitioner subsequently filed a petition for review in the California Supreme Court. On February 18, 2010, the state supreme court denied the petition for review.

On May 6, 2010, Petitioner filed the present federal habeas petition.

FACTUAL BACKGROUND

The state appellate court summarized the facts of the case as follows:

> The victim met defendant in mid-October of 2007. She and defendant began to live together, along with the victim's 10-month-old son, in an apartment in Castroville. In November of that year defendant choked her and then threatened to kill her if she called the police. Defendant left but later moved back and resumed physically and verbally abusing the victim.
>
> At some point during this time, the victim discovered that she was pregnant. She told defendant about her pregnancy sometime in November. Defendant was happy about the pregnancy initially but soon resumed being violent. He refused to believe he was the baby's father (we note that the record does not reveal that she told him he was; it does, however, suggest that she may have told him this). He kicked the victim in the stomach during her pregnancy and inflicted other injuries.
>
> On December 14, 2007, the victim went to a clinic in Salinas. While there, she filled out a questionnaire that asked, among other things, whether she was in an abusive relationship. She indicated that she was. The clinic notified the Monterey County Sheriff's Department, but the victim refused to file a complaint.
>
> Defendant's attacks on the victim continued as late as January 5, 2008, and she ended the relationship on that day. On January 6, the victim changed her mind

2

>       about her reticence and filed a report with the
>       sheriff's department about defendant's abuse. On
>       January 7, a sheriff's deputy photographed her
>       injuries. About this time the victim also decided to
>       have and proceeded with an abortion.

(People v. Negron (Op.), No. H033719, 2009 WL 4817744 (Cal. Ct. App. Dec. 15, 2009) at *1-2.)

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant habeas relief unless the state appellate court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, id. at 407-409, and the second prong applies to decisions based on factual determinations, Miller El v. Cockrell, 537 U.S. 322, 340 (2003). A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

Williams, 529 U.S. at 412-13. A state appellate court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome the presumption of correctness under § 2254(e)(1); conclusory assertions will not do. Id. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider a petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the

4

state judgment was erroneous under the standard of § 2254(d). <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801, 806 (1991). In the present case, the California Court of Appeal is the highest court that addressed Petitioner's claims.

## DISCUSSION

Petitioner asserts that the trial court erred by denying him the right to present certain medical records of the victim. He claims that the excluded evidence was highly relevant and should have been admitted because: (1) it directly spoke to the credibility of the victim, and (2) it would not have necessitated undue consumption of the court's time. Petitioner further claims that excluding this evidence: (1) violated his right to a complete defense, (2) violated his Sixth Amendment right to confront witnesses, because his right to cross-examine outweighed the victim's right to privacy, and (3) resulted in prejudice.

The following factual background for this claim has been taken from the state appellate court's decision:

> Defendant claims that the trial court abused its discretion by excluding relevant evidence (see Evid. Code, §§ 210, 351) and violated his rights undergirded by the Fifth and/or Sixth Amendments and the Fourteenth Amendment to the United States Constitution to present a complete defense and his Sixth Amendment right to confront the witnesses against him when it excluded evidence he wished to introduce about the timing of the victim's abortion, namely medical records that might have persuaded one or more jurors that she was pregnant by another man, not defendant, and had falsely or inaccurately accused him of being the father.
>
> The victim testified that when she told defendant she was pregnant, "[h]e would always say he wasn't" the father. During one discussion of the topic he lashed out at her verbally and kicked her in the stomach, pulled her hair, and slapped her face. The victim also

5

testified that her first sexual intercourse with defendant occurred on October 28, 2007. Defendant wanted to introduce impeaching evidence that an examination done on December 18, 2007, showed the age of the aborted fetus to be nine weeks, meaning that it could have been conceived in mid-October and defendant would not be the father. Under the principle of <u>falsus in uno</u>, <u>falsus in omnibus</u>, the impeachment evidence could cast doubt among the jurors about the veracity of the victim's entire account that defendant physically abused her.

    The record does not tell us the evidentiary basis under which the trial court considered the matter. The court ruled, however, that the evidence must be excluded because in the court's view it was only marginally relevant and its introduction would be too time-consuming -- evidently a ruling under Evidence Code section 352, which provides in relevant part that "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . necessitate undue consumption of time . . . ." The court described its reasoning (a description that both parties agreed was accurate) following an unreported discussion with the parties about the evidence: Regarding "the potential introduction of the medical records, . . . the Court had expressed some considerable concern about the fact that this has the potential of invading the privacy of [the victim]. The Court had an opportunity to review those medical records in chambers. [¶] [Defense counsel] had indicated that she wanted to bring out certain aspects of the medical records that could potentially impeach [the victim], and I asked for an offer of proof. The offer of proof was . . . that it was very likely that [the victim] was pregnant from an earlier relationship and that medical records would show that that was indeed the case; that one could then conclude that she had lied to the defendant by indicating that he was the father of the unborn child; and that if she was capable of lying under one circumstance, then she certainly would be capable of lying with regard to alleging that she was a victim of domestic violence."

    The Court reviewed the medical records and determined that there was the following five facts: [¶] That on December the 13th, [the victim] stated that her last menstrual period was October the 18th of 2007; second, that [the victim] had checked a box on a form indicating that she was in an abusive relationship; third, that on December the 14th the medical staff at the hospital or clinic where she was at contacted the

6

> Salinas Police Department to report an abusive relationship as required by law; fourth, that on December the 13th the stenography record indicated that someone, some medical person, wrote down the number '8,' for eight weeks, next to a box asking for the estimated age of the fetus; and fifth, that on December the 18th, 2007, the pathology exam that the exam at the conclusion of the abortion, the pathology exam, showed someone had written in there "age of the fetus, nine weeks."
>
> "I -- as a result of this I had a conversation with Counsel in chambers, at which time I told them that the information was sufficiently marginal as to be of minimal relevance in determining whether or not [the victim] may or may not have been telling the truth when talking to the defendant indicating that he was the father of the child; that there were a variety of other issues involved in addressing the potential admissibility of that medical record that would indeed involve an undue consumption of court time, and for those reasons I was not going to allow the medical records into evidence."
>
> Defendant acknowledges that the evidence would not establish conclusively that the victim was inaccurate in other details of her testimony -- e.g., the victim "might have been unaware of when her pregnancy started" or "the pathology report . . . might have been inaccurate." But he notes that Evidence Code section 210 provides in pertinent part that "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action" and observes that the case mainly involved the jurors' assessment of the victim's credibility inasmuch as the case rested on the victim's testimony, buttressed only by photographic evidence that did not identify him as an assailant. In defendant's view, the question of the evidence's conclusiveness bears on "the weight of the evidence, not its admissibility. If the records had been admitted into evidence, . . . the jury could have . . . accorded them whatever significance" it found warranted. Because "the only significant decision the jury had to make was whether or not [the jurors] believed" the victim, the trial court, in defendant's view, abused its discretion by excluding the evidence and violated his constitutional rights.

(Op. at *2-3 (alterations in original).)

The state appellate court described the applicable law as follows:

> "On appeal, 'an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence . . . .'" (People v. Hovarter (2008) 44 Cal.4th 983, 1007-1008.) A trial court abuses its discretion when its ruling falls outside the bounds of reason. (People v. Benavides 35 Cal.4th 69 at 88.)
>
> The foregoing rule applies to limit both the admissibility of relevant evidence and the scope of our review of a ruling excluding it. "'As with all relevant evidence . . ., the trial court retains discretion to admit or exclude evidence offered for impeachment. [Citations.] A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]' [Citation.] '[T]he discretion to be exercised is that of the trial court, not that of the reviewing court. Thus, even if the reviewing court might have ruled otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record.'" (People v. Tuggles (2009) 178 Cal.App.4th 1106, 1128.)

(Id. at *3-4.)

The state appellate court rejected this claim as follows:

> Here, we cannot say that the court abused its discretion, i.e., was unreasonable to conclude that the evidence would have been unduly time-consuming in relation to its potential probative value. The medical records would not have necessarily established that the victim was misleading defendant about the identity of the unborn child's father, only that her apparent belief that he was the father possibly was incorrect. That would not have taken anything away from the content of her testimony, and inferences that could reasonably be derived therefrom, that she apparently communicated to defendant that he was the father and he reacted badly to the news, at one point becoming angry and kicking her in the stomach, pulling her hair, and slapping her face.

(<u>Id.</u> at *4.)

As explained above, Petitioner argues that admitting medical records about a discrepancy in the paternity of the unborn child could discredit the witness sufficiently to undermine the rest of her testimony about being a victim of domestic violence. However, the state courts were not unreasonable in finding Petitioner's theory too attenuated to justify admission. The trial court did not abuse its discretion by excluding the medical evidence, nor was it unreasonable to conclude that the evidence would have been unduly time consuming in relation to its potentially probative value. Therefore, the state appellate court's decision to uphold the trial court's decision was reasonable.

Petitioner's due process claim is also not compelling. As the state appellate court articulated:

> As for defendant's constitutional claims, we discern no violation of any constitutional guaranty. "[F]undamental fairness [is] the touchstone of due process . . . ." (<u>Gagnon v. Scarpelli</u> (1973) 411 U.S. 778, 790.) Thus, for the court's evidentiary ruling to have risen to the level of a due process violation because it denied him a right to present a defense, it must have rendered defendant's trial fundamentally unfair. Because the court's ruling did not violate state law in the first instance, <u>a fortiori</u> we perceive no due process violation. That is also true to the extent that the right to present a defense implicates the Sixth Amendment and with regard to defendant's Sixth Amendment confrontation clause claim. All of these claims rest on defendant's claim of error under state law, and, therefore, because defendant's state law claim fails, so necessarily must his constitutional claims. "[R]ejection on the merits of a claim that the trial court erred on the issue actually before that court necessarily leads to rejection of the newly applied constitutional 'gloss' as well. No separate constitutional discussion is required in such cases, and we therefore provide none." (<u>People v. Lewis and Oliver</u> (2006) 39 Cal.4th 970, 990, fn. 5 [addressing a due process claim that hinged on a claim of state-law error].)

9

(Id. (alterations in original).)

The Sixth Amendment and the due process guarantee of fundamental fairness afford an accused in a criminal trial the right to present a defense. Chambers v. Mississippi, 410 U.S. 284, 294 (1973); Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (citing California v. Trombetta, 467 U.S. 479, 485 (1984)). The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate the Sixth Amendment right to present a defense, as well as the due process right to a fair trial. DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001). However, "[s]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted). The "Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice or confusion of the issues." Id. at 325-26.

Here the state appellate court found that the exclusion of the medical evidence did not violate the state evidentiary rules or Petitioner's constitutional rights to present a defense and due process. Moreover, the excluded evidence was only marginally relevant. According to Petitioner, the excluded evidence was intended to show that if the victim lied about one issue -- i.e., the paternity of the unborn child -- then all of her testimony would be in question. However, even if the evidence showed the victim had lied in the past, it is not necessarily admissible. Even if Petitioner's logic were correct, the evidence could still

10

be excluded because of the discretion the trial court has to exclude evidence that is only marginally relevant.

In sum, for the reasons explained by the state appellate court, the trial court reasonably found that the excluded medical evidence had minimal, if any, relevance. Therefore, excluding such evidence did not violate Petitioner's constitutional rights to present a defense or to a fundamentally fair trial guaranteed by due process. See Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all evidence, regardless of how marginal its relevance). Accordingly, the state appellate court's denial of this claim was neither contrary to nor an unreasonable application of federal law. Therefore, Petitioner's due process claim is DENIED.

CONCLUSION

For the foregoing reasons, the Court DENIES the petition for a writ of habeas corpus on all claims.

Further, a Certificate of Appealability is DENIED. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 6/21/2012

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE